**SKAPIK LAW GROUP**
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Cross Complainant and Nominal Defendant ME-GECIK NELSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.N., by and through his G.A.L. Vonice Nelson; CHEE-SHEP NELSON; KE-GAT NELSON; WILLIAM NELSON, JR., individually and as successors-in-interest to WILLIAM NELSON, DECEASED; and CINDY MCKINNON, individually,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA;NEIL JOHNSON; ME-GECIK NELSON, individually and nominally; and DOES 1-10, inclusive,<br><br>Defendants.<br>_____<br><br>ME-GECIK NELSON, individually and as successor-in-interest to WILLIAM NELSON, DECEASED,<br><br>Cross-Complainant<br><br>v.<br><br>NEIL JOHNSON; and DOES 1-10, inclusive,<br><br>Cross-Defendants | Case No.: 3:24-cv-09447-WHO<br><br>**NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS-COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment – Unreasonable Seizure/Unlawful Detention and Arrest (42 U.S.C. § 1983)<br>2. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)<br>3. Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)<br>4. Fourteenth Amendment – Substantive Due Process (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

## CROSS-COMPLAINT FOR DAMAGES

1. Comes now Cross Complainant and Nominal Defendant ME-GECIK NELSON, for his Complaint against NEIL JOHNSON and DOES 1-10, inclusive.

## JURISDICTION AND VENUE

2. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

4. At all times relevant, Decedent WILLIAM NELSON ("DECEDENT") was an individual residing in the Hoopa Valley Tribal lands, California and was a member of the Hoopa Valley Tribe.

5. At all times relevant, Cross Complainant and Nominal Defendant ME-GECIK NELSON ("Cross-Complainant) is and was an individual residing in the City of McKinleyville, County of Humboldt, California. ME-GECIK NELSON is the biological son of Decedent WILLIAM NELSON ("DECEDENT"), and sues in his individual capacity and as successor-in-interest to DECEDENT. ME-GECIK NELSON seeks survival damages, wrongful death damages, compensatory damages, and punitive damages under federal law.

6. At all times relevant, Cross-Defendant NEIL JOHNSON ("JOHNSON") was duly appointed by the State of California as a California Highway Patrol ("CHP") officer, and at all times relevant was an employee and/or agent of the State of California, subject to oversight and supervision by the State of California's elected and non-elected officials. At all times relevant, JOHNSON was acting under color of state law and within the course and scope of his employment as a CHP officer.

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

7.    The true names of cross-defendants DOES 1-10, inclusive, are unknown to Cross-Complainant, who therefore sues these cross-defendants by such fictitious names. Cross-Complainant will seek leave to amend this complaint to show the true names and capacities of these cross-defendants when they have been ascertained. Each of the fictitiously named cross-defendants is responsible in some manner for the conduct and liabilities alleged herein.

8.    JOHNSON and DOES 1-10, inclusive, and each of them, are sued in their individual capacities.

9.    On information and belief, JOHNSON and DOES 1-10, inclusive, are residents of the County of Humboldt, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.    Cross-Complainant repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as though fully set forth herein.

11.    On September 17, 2023, at approximately 7:30 a.m., DECEDENT was driving on State Route 96 with two passengers, with the intent to go fishing. While DECEDENT was driving, JOHNSON attempted to initiate a traffic stop of DECEDENT for alleged vehicle code infractions.

12.    On information and belief, when JOHNSON initiated the traffic stop of DECEDENT, he had no information that any person was at risk of harm or danger; he had no information about DECEDENT's background or history; he did not see DECEDENT act in a violent, threatening, or aggressive manner; he had no information that a crime was being or about to be committed by DECEDENT, and he had no information that DECEDENT was armed with any weapon.

13.    After a brief vehicle pursuit, DECEDENT pulled over into a turnout and exited his vehicle.

14.    JOHNSON approached DECEDENT, and DECEDENT moved about 200 yards down the road along the shoulder of the road. JOHNSON followed the DECEDENT. JOHNSON pointed his Taser at DECEDENT, at which point DECEDENT

stopped running and placed his hands palms up. An altercation ensued, after which DECEDENT again ran away from JOHNSON. JOHNSON deployed his taser at DECEDENT, successfully striking him in the back. After the Taser was successfully deployed, there was another altercation between DECEDENT and JOHNSON. During this second altercation, JOHNSON fired lethal shots at DECEDENT.

15.    While acting under color of state law and in the course and scope of his duties as law enforcement officer for CHP, JOHNSON fired three lethal shots at DECEDENT, striking and injuring DECEDENT and ultimately killing him. DECEDENT was lying flat on his back at the time of the shots. Even though JOHNSON was not faced with an immediate threat of death or serious bodily injury and had less than lethal alternatives available to subdue DECEDENT and take him into custody (including redeploying the Taser or using the police baton), JOHNSON did not exhaust these alternatives.

16.    Prior to using deadly force against DECEDENT, JOHNSON issued no warnings that he would do so, despite it being feasible.

17.    At the time JOHNSON used deadly force against DECEDENT, DECEDENT posed no immediate threat of death or serious bodily injury to anyone, including JOHNSON or any other officers or bystanders. Therefore, the shooting was excessive and unreasonable.

18.    On information and belief, despite having knowledge that DECEDENT was seriously injured by JOHNSON's use of deadly force, JOHNSON failed to timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT was a contributing cause of DECEDENT's harm, injury, pain and suffering, and ultimate death.

19.    DECEDENT suffered gunshot wounds to his body, which ultimately caused his death.

- 4 -
NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

20. Cross-Complainant ME-GECIK NELSON is DECEDENT's successor-in-interest as defined in California Code of Civil Procedure § 377.11 and succeeds to DECEDENT's interest in this action as the biological son of DECEDENT.

## I.

### FIRST CLAIM FOR RELIEF

**Fourth Amendment – Unreasonable Search and Seizure/Detention and Arrest**

**(42 U.S.C. § 1983)**

(By ME-GECIK NELSON against JOHNSON and DOES 1-10, inclusive)

21. Cross-Complainant repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as though fully set forth herein.

22. At approximately 7:30 a.m. on September 17, 2023, DECEDENT was driving on State Route 96 with two passengers when JOHNSON attempted to pull DECEDENT over for alleged minor vehicle code infractions.

23. JOHNSON was acting under color of law and within the course and scope of his employment as a CHP officer for the State of California when he initiated the stop.

24. At all times relevant, DECEDENT had a legitimate expectation of privacy of his person and within his vehicle and person, which is rooted in understandings that are recognized and permitted by society as reasonable.

25. Upon information and belief, at the time of JOHNSON's seizure of Decedent, he had no information that any person was at risk of harm or danger; JOHNSON had no information about DECEDENT's background or history; did not see DECEDENT act in a violent, threatening, or aggressive manner; had no information that a crime was being or about to be committed by DECEDENT; and had no information as to whether DECEDENT was armed with any weapon.

26. JOHNSON had no reasonable suspicion to detain or probable cause to arrest DECEDENT.

27. When JOHNSON unreasonably stopped DECEDENT's vehicle and later pointed his firearm at and shot DECEDENT, he violated DECEDENT's right to be

secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. In addition to the unjustified stop of DECEDENT being unreasonable, the scope and manner of the detention was also unreasonable. It was not necessary to use force, including lethal force against DECEDENT, who was unarmed.

28. The conduct of JOHNOSN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendant JOHNSON.

29. As a result of his misconduct, JOHNSON is liable for DECEDENT's injuries and death.

30. Cross-Complainant ME-GECIK NELSON brings this claim as successor-in-interest to DECEDENT, and seeks survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life, for the violations of DECEDENT's rights. Cross-Complainant also seeks attorneys' fees under this claim.

## II.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment – Excessive Force (42 U.S.C. § 1983)

(By ME-GECIK NELSON against JOHNSON and DOES 1-10, inclusive)

31. Cross-Complainant repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as though fully set forth herein.

32. At approximately 7:30 a.m. on September 17, 2023, DECEDENT was driving on State Route 96 with two passengers when JOHNSON attempted to pull DECEDENT over for alleged minor vehicle code infractions.

33. After a brief pursuit, DECEDENT pulled over into a turnout and exited his vehicle.

34. JOHNSON approached DECEDENT, and DECEDENT moved about 200 yards down the road along the shoulder of the road. JOHNSON followed the

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

DECEDENT. JOHNSON pointed his Taser at DECEDENT, at which point DECEDENT stopped running and placed his hands palms up. An altercation ensued, after which DECEDENT again ran away from JOHNSON. JOHNSON deployed his taser at DECEDENT, successfully striking him in the back. After the Taser was successfully deployed, there was another altercation between DECEDENT and JOHNSON. During this second altercation, JOHNSON fired lethal shots at DECEDENT.

35.    While acting under color of state law and in the course and scope of his duties as law enforcement officer for CHP, JOHNSON fired three lethal shots at DECEDENT, striking and injuring DECEDENT and ultimately killing him. DECEDENT was lying flat on his back at the time of the shots. Even though JOHNSON was not faced with an immediate threat of death or serious bodily injury and had less than lethal alternatives available to subdue DECEDENT and take him into custody (including redeploying the Taser or using the police baton), JOHNSON did not exhaust these alternatives.

36.    Prior to using deadly force against DECEDENT, JOHNSON issued no warnings that he would do so, despite it being feasible.

37.    At the time JOHNSON used the Taser and deadly force against DECEDENT, DECEDENT posed no immediate threat of death or serious bodily injury to anyone, including JOHNSON or any other officers or bystanders. Therefore, the use of the Taser and the shooting were excessive and unreasonable.

38.    JOHNSON's unjustified use of deadly force deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.    At all times relevant, including during the duration of the Taser deployment and through all of the firearm shots by JOHNSON, DECEDENT was not armed with a gun or a knife at any point during the incident and posed no immediate threat of death or serious bodily injury to JOHNSON or anyone else. Therefore, the shooting was excessive

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

and unreasonable. There were less than lethal alternatives readily available that JOHNSON could have used to detain DECEDENT or take him into custody.

40. As a result of the foregoing, DECEDENT suffered great pain up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

41. The conduct of JOHNSON was willful, malicious, and/or done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

42. As a result of his misconduct, JOHNSON is liable for DECEDENT's injuries and death.

43. Cross-Complainant ME-GECIK NELSON brings this claim as successor-in-interest to DECEDENT, and seeks survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life, for the violations of DECEDENT's rights. Cross-Complainant also seeks attorneys' fees under this claim.

## III.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

(By ME-GECIK NELSON against JOHNSON and DOES 1-10, inclusive)

44. Cross-Complainant repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as though fully set forth herein.

45. After JOHNSON shot DECEDENT multiple times, DECEDENT was immobile on the ground, alive, bleeding profusely, and was in obvious and critical need of medical care and treatment.

46. On information and belief, JOHNSON failed to provide needed medical care to DECEENT, failed to timely summon needed medical care for DECEDENT, prevented medical care personnel from timely treating DECEDENT, and/or refused to permit medical care personnel to access and care for DECEDENT at the scene for an appreciable time after the incident.

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

47.    The denial of medical care by JOHNSON deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to United States Constitution and applied to state actors by the Fourteenth Amendment.

48.    As a result of the foregoing, DECEDENT suffered great pain and suffering up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

49.    JOHNSON knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury, the unnecessary and wanton infliction of pain, or death, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

50.    The conduct of JOHNSON was willful, malicious, and/or done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

51.    As a result of his misconduct, JOHNSON is liable for DECEDENT's injuries and death.

52.    Cross-Complainant ME-GECIK NELSON brings this claim as successor-in-interest to DECEDENT, and seeks survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life, for the violations of DECEDENT's rights. Cross-Complainant also seeks attorneys' fees under this claim.

## IV.

## FOURTH CLAIM FOR RELIEF

### Fourteenth Amendment – Substantive Due Process

(By ME-GECIK NELSON against JOHNSON and DOES 1-10, inclusive)

53.    Cross-Complainant repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as though fully set forth herein.

54.    At all times relevant, JOHNSON was acting under color of state law.

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

55. ME-GECIK NELSON, Cross-Complainant, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in his familial relationship with his father, DECEDENT.

56. The aforementioned actions of JOHNSON, along with other undiscovered conduct, shock the conscience, in that JOHNSON acted with deliberate indifference to the constitutional rights of Cross-Complainant, including by using excessive and unreasonable deadly force against DECEDENT and by denying him medical care, all of which caused injuries that resulted in DECEDENT's death, and with purpose to harm unrelated to any legitimate law enforcement objective. JOHNSON is liable to Cross-Complainant for the interference with his familial relationship with DECEDENT.

57. As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died from the wounds inflicted upon him by JOHNSON. JOHNSON thus violated the substantive due process rights of Cross-Complainant to be free from unwarranted interference with his familial relationship with DECEDENT.

58. As a direct and proximate cause of the acts and omissions of JOHNSON, Plaintiff suffered emotional distress, mental anguish, and pain. Cross-Complainant has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of his natural life.

59. The conduct of JOHNSON was willful, wanton, malicious, and/or done with reckless disregard for the rights and safety of DECEDENT and Cross-Complainant and therefore warrants the imposition of exemplary and punitive damages as to JOHNSON.

60. Cross-Complainant brings this claim individually for the interference with his relationship with his father, DECEDENT, and seeks wrongful death damages for the

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

violation of Cross-Complainant's rights. Cross-Complainant also seeks attorney's fees under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainant ME-GECIK NELSON, individually and as successor-in-interest to WILLIAM NELSON, DECEASED, requests entry of judgment in his favor and against Cross-Defendants NEIL JOHNSON and DOES 1-10, inclusive, as follows:

    A. For compensatory damages, including both survival damages including for pre-death pain and suffering and wrongful death damages under federal law, in an amount to be proven at trial;

    B. For punitive damages against the individual defendants in an amount to be proven at trial;

    C. For interest;

    D. For reasonable attorneys' fees, including litigation expenses;

    E. For costs of suit; and

    F. For such other relief as the Court may deem just, proper, and appropriate.

SKAPIK LAW GROUP

Dated: June 3, 2026        By:   */s/ Matthew T. Falkenstein*
                           Mark J. Skapik
                           Geralyn L. Skapik
                           Blair J. Berkley
                           Matthew T. Falkenstein
                           Attorneys for Cross-Complainant and Nominal Defendant ME-GECIK NELSON

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Cross-Complainant ME-GECIK NELSON hereby demands a trial by jury.


SKAPIK LAW GROUP


Dated: June 3, 2026                    By:    */s/ Matthew T. Falkenstein*
                                              Mark J. Skapik
                                              Geralyn L. Skapik
                                              Blair J. Berkley
                                              Matthew T. Falkenstein
                                              Attorneys for Cross-Complainant and
                                              Nominal Defendant ME-GECIK
                                              NELSON

NOMINAL DEFENDANT ME-GECIK NELSON'S CROSS COMPLAINT FOR DAMAGES